UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Scott Rydin Foster | ) | |
| | ) | |
| Plaintiff, | ) | Case No: 1:20-cv-4230 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| PHH Mortgage; et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF/RELATOR'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS**

Now comes Plaintiff-Relator, Scott Rydin Foster (Foster), by and through his attorney, Eryk Folmer, and in opposition to Defendants'[1] Joint Motion to Dismiss ("JMTD") states as follows:

### Introduction

At the outset, in moving for dismissal, the Defendants confuse the timeframe that Foster alleges that violations of the False Claim Act ("FCA") occurred. Defendants do so by treating the actions that led up to the alleged FCA claims with the actual claim for payment(s) made to the government, which is what gives rise to an actionable FCA claim. In other terms, the Defendants treat the "conspiracy" leading up to the act as the actual act itself. Foster does not dispute that his complaint is limited to individuals, like him, that were telephonically promised a forbearance by servicers during the six-month period prior to the passage of Dodd-Frank (the so-

---

[1] The moving Defendants are JPMorgan Chase Bank, N.A. ("JPMC"), PHH Mortgage Corporation ("PHH"), Bank of America Corporation ("BAC"), HSBC Finance Corporation ("HSBC"), Wells Fargo Bank, N.A. ("Wells Fargo"), and PNC Bank ("PNC"). Although not all the named Defendants, a ruling on most of the aspects of the moving Defendants' motion would be dispositive to all defendants.

called "relevant time period" mentioned in the complaint) – when servicers were not excluded from mortgage originator agency liability. (*See Generally* Second Amended Complaint "SAC," Doc. # 34 at ¶17). However, that timeframe is given to identify the loans that Foster alleges would eventually qualify under the FCA, which is when these individual loans were judicially/short sold and the originating lender attempted to recoup losses (the difference between what was owed on the note/loan and what the property sold for) from the federal government through Fannie Mae and Freddie Mac. SAC at ¶ 40. Most of the arguments Defendants make for dismissal are based on this misreading.

One of Defendants' key arguments is the lack of specificity or particularity in Foster's SAC. In doing so, Defendants claim that Foster fails to reach the pleading standards required by Federal Rule of Civil Procedure 9(b). However, such arguments are defeated because Foster's inability to plead exactitudes regarding dates and other instrumentalities is and was due to the fact that those facts are in the exclusive control of the Defendants. Indeed, as more fully explained below, the Seventh Circuit has recognized a relaxed standard under Rule 9(b) for FCA claims. *See e.g. U.S. ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 854 (7th Cir. 2009); *See also U.S. ex rel. Yannacopolous v. Gen. Dynamics*, 315 F. Supp. 2d 939, 945 (N.D. Ill. 2004). For instance, Foster's judicial sale was approved on August 3, 2017[2], but the false or fraudulent claim presented to the government would be sometime thereafter and only known to the Defendants.

Another issue Defendants raise is that Foster's claims are time-barred. Again, this misreads Foster's complaint and improperly attempts to have Foster plead something of which

---

[2] *See generally PHH v. Foster*, Cook County Circuit Court Case # 2010CH 48036; a copy of the Order Approving Sale is attached hereto as Exhibit A. As this is a public court record, this Court may take judicial notice of the same. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012)

he could not have any knowledge. Just to use Foster as an example, even if PHH (the lender/plaintiff in Foster's foreclosure case) submitted its (false) claim for recoupment of loss on the date of judicial approval of sale, Foster would have had until August 3, 2020 to file an individual claim at a minimum. *See* 31 U.S.C. § 3731(b). Therefore, Defendants' argument that the claims are time-barred is incorrect. Indeed, none of the FCA claims contemplated in the SAC could have occurred prior to the passage of Dodd Frank.

Moreover, since Foster's claim and the claims referenced in the complaint could *only* occur after the passage of Dodd Frank, the complaint must be viewed under the lens of the current amendment to the FCA – and pertinent to Defendants' JMTD, how the public disclosure bar is applied thereto. Although Foster readily admits that it is widely known that lenders were mishandling, mis-servicing, and otherwise handling loans fraudulently, he posits that the actual FCA claims herein are different than those previously disclosed or fall outside of the time-frames and subject matter contemplated by the consent judgments and settlements involving some of the named Defendants.

The SAC should not be dismissed.

### Background/Procedural Information

Foster originally filed his complaint, pro se, on July 17, 2020. (Doc. #1). On October 8, 2020, he later moved – again, pro se – to file an amended complaint. (Doc. # 6). This Court *sua sponte* dismissed this matter, without prejudice, on the basis that *qui tam* actions cannot be maintained by *pro se* litigants. (Doc. #7). Foster then engaged counsel to preserve his right(s) and access to Court. Foster thus moved to alter/amend/vacate the dismissal, pursuant to Fed. R. Civ. P 59(e). (Doc. #20). In a November 20, 2020 minute entry, this Court entered and continued Foster's motion and stated that Foster's *pro se* complaint was "anything but 'short and

plain' statement," and that any filed amended complaint shall comply with pleading standards (Doc. # 21).

Given the Court's direction, Foster filed a shorter and plainer amended complaint. (Doc. # 27). This Court ordered Foster to file a second amended complaint that included the defendants in the case caption and body of the complaint. (See Doc. #33). Foster complied and filed the Second Amended complaint (Doc. #34) that the Defendants now seek to dismiss.

Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 9(b), and 12(b)(1) and (6). Defendants argue that Foster has not alleged facts with the requisite particularity required in making a FCA claim; that his claims are time barred; that his claims have already been publicly disclosed; and that his claims have been released as to certain defendants via previously entered consent judgments. For the reasons below, Defendant's JMTD should be denied.

I. The FCA and Fed. R. Civ. P 9(b).

Analyzing whether Foster satisfied the pleading requirements of Fed. R. Civ. P. 9(b) can expedite the overall analysis regarding dismissal, because a complaint that meets the pleading requirements and standards of Rule 9(b) will necessarily meet the pleading standard of Fed. R. Civ. P. 12(b)(6). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F. 3d 732, 736-37 (7th Cir. 2014). Given the background in this matter and that Seventh Circuit has relaxed the heightened Rule 9(b) standard in FCA claims (*See U.S. ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 854 (7th Cir. 2009); *United States, ex rel. Rose Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016)), Foster's complaint is sufficiently pled.

    A. The precise details of Defendants' alleged fraudulent scheme would be in the exclusive control of the Defendants; Foster has otherwise sufficiently pled violations of the FCA

Although a plaintiff usually must describe the "who, what, when, where, and how" of an alleged fraud, "courts and litigants often erroneously take an overly rigid view of the formulation." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.,* 631 F.3d 436, 442 (7th Cir. 2011). What is necessary to allege varies on a case-to-case basis. *Id.* Traditionally, Fed R. Civ P 9 holds a plaintiff to a heightened pleading standard because of the "stigmatic injury that potentially results from allegations of fraud." *United States ex re. Bogina v. Medline Indus., Inc.,* 809 F.3d 365, 370 (7th Cir. 2016). An accusation of "fraud can do great damage to a [defendant] before the [defendant] is [potentially] exonerated in litigation … *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105 (7th Cir. 2014).

However, in the realm of FCA claims, a plaintiff does not need to "present, or even include allegations about, a specific document or bill that the defendants submitted to the Government." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 777 (7th Cir. 2016) (citing *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009). As long as a complaint can lead one to reasonably understand that defendants had submitted false or fraudulent claims asking for payment, then it should survive a motion to dismiss. *Lusby*, 570 F.3d at 854. Here, Foster has sufficiently pled FCA violations.

Initially, the potential for stigmatic injury to the defendants for this claim is nearly non-existent. As Defendants have pointed out, instances of deception, fraud, unfair business practices, etc., by mortgage lenders during and after the Great Recession, is well-known. Foster's allegations that there was a separate subset of loans that were backed by Fannie Mae and

Freddie Mac, that were coerced into non-payment by servicers, and ultimately judicially sold/short sold for a loss to the government, are unsurprising.

Secondly, Foster's complaint sufficiently alleges that during six months prior to the passage of Dodd Frank, mortgage servicers told borrowers to "get behind" in payments so that they could be put into forbearance. *See SCA* at ¶ 14, 34. The lender/servicer later reneged and foreclosed upon the loans. *See Id.* at ¶ 34, 42. This led to judicial or short sales where the property was sold for an amount lower than what was owed on the loan. *See Id.* at ¶ 19, 23, 40. This shortfall would be made up by the government in paying out loans backed by Fannie Mae and Freddie Mac. *See Id.* at ¶ 23, 39-40, 42. Again, the exact date of claim and the exact amount of claim is in the sole control of the Defendants. Nonetheless, the loss that was paid out to the lenders by government backed securities was borne either fully or partially by the government. The who, what, where, when, and how can be reasonably discerned from the SAC.

Defendants attempt to make the distinction that Foster only alleges that false statements were made to borrowers and not the GSE's (Fannie and Freddie) themselves. Again, this misconstrues the complaint and the FCA itself. The FCA does not require "false" statements, per se. It requires false – or *fraudulent* claims for payment. (31 U.S.C. § 3729(a)(1)(B)). Foster alleges that borrowers were basically lied to, or at the very least fraudulently misled, by lenders/servicers, which began the process that ultimately led to judicial/short sales of their home. Once that sale occurred, at a price lower than the amount owed, the lenders would recoup the shortfall from the GSEs – which were backed by government funds. The Defendants admit that lenders and servicers were committing fraud – they even point to several exhibits that explicitly say that fraud was occurring. The poisonous tree of this fraud extended to the very end, when the GSEs paid out these claims. Only the defendants would know which of these

funds were from the GSEs "private funds" or from funds received from the government. It would be an impossibility for Foster to plead differently.

II.     The SAC meets the pleading standards of Fed R. Civ. P. 12(b).

  a.  12(b)(1) is inapplicable to these claims.

Defendants correctly state that prior to March 23, 2010, the FCA defined the public disclosure bar as a jurisdictional bar, where Fed R. Civ. P. 12(b)(1) would apply. However, as stated above, the actual actionable FCA claims in this case could have only occurred after the passage of Dodd Frank, July 21, 2010. Therefore, 12(b)(1) is inapplicable here.

  b.  Foster has properly stated a claim; 12(b)(6) does not apply.

Again, since Foster can overcome a Rule 9(b) motion to dismiss, he necessarily meets the pleading standard of Fed. R. Civ. P. 12(b)(6). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F. 3d 732, 736-37 (7th Cir. 2014). Under a Rule 12(b)(6) motion to dismiss, the Court tests the sufficiency of a complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). When considering the motion, the court accepts as true all well-pleaded allegations, and draws all reasonable inferences in the Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A claim is facially plausible when the factual allegations allow the court to draw reasonable inferences that a defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

For the same reasons he has met the pleading standard of Rule 9(b) above, Foster similarly contends that he has met the pleading standards of 12(b)(6). Nonetheless, Defendants argue that Foster cannot state a "claim" because GSEs such as Fannie Mae and Freddie Mac are private corporations and not the government – only chartered by the government. Again, this would cause an impossible burden on Foster to show that particular funds for the payment of a

particular loss were sourced from the government rather than funds that Fannie Mae or Freddie Mac may have gathered from private sources.

    c.   The claims are not time-barred.

In *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, the Supreme Court stated that FCA claims maintained by *qui tam* relators must be brought within either six years of the FCA violation, under 31 U.S.C. § 3731(b)(1), or "three years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances," but never "more than 10 years after" the violation, under § 3731(b)(2). *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507 (2019). As mentioned before, the exact date of Foster and all of the other claims contemplated are unknown because only the Defendants would know when it submitted fraudulent claims for loss recoupment. Nonetheless, the claims complained of in the SAC could not have been made until after passage of Dodd Frank – satisfying the ten-year statute of repose. The FCA violation tied to Foster's individual claim could not have been made earlier than August 3, 2017 (which would still today be within the statute of limitations. Therefore, the claims are not time-barred.

    d.   The allegations made in Foster's complaint do not fall victim to the Public Disclosure Bar

Again, Foster cannot argue that it is common knowledge that lenders and servicers entered into consent judgments, settlement agreements over their mishandling of mortgage loans during the mortgage loan crisis. However, Foster's specific allegations have not been publicly disclosed.

Defendants first point to "Mortgage Fraud Complaints" that they attach as their Exhibits 1 and 2, and later the consent judgments (Exhibits 3-6) stemming from those mortgage fraud complaints as its initial evidence that Foster's claims have been publicly disclosed. However, the Mortgage Fraud Complaint attached as Exhibit 1 only dealt with FHA loans. The Mortgage Fraud Complaint attached as Exhibit 2, dealt with FHA RHS, and VA loans, and loans that were subject to the US Trustee Program via bankruptcy filings. None of these complaints dealt with Fannie Mae or Freddie Mac loans. The OCC consent orders attached as Exhibits 7-11 were entered into between 2011 to 2013.[3] Foster's claim could not happen until 2017 (i.e. the FCA fraudulent claim occurred after the entry of the order). Many, if not all, of Foster's short sale clients went to sale after 2013. The settlement agreements attached as Exhibits 12 and 13 do discuss servicing issues, false and/or fraudulent affidavits, and other servicing atrocities. However, they do not discuss the gaps of value sought to be recovered when these mis-serviced loans were brought to judicial/short sale and the lender sought recoupment of loss of value that it had intrinsically caused.

Foster's claims underscore the giant issue here that despite all the servicing issues these Defendants knew about – and even after they entered into consent judgments and settlements regarding the same – they still judicially/short sold properties whose loans payoffs where inflated due to their own wrongdoing. The Defendants then still collected its "losses" from funds that came from the government of the United States of America.

The SAC should not be dismissed.

---

[3] Defendants point out that some of the consent orders included GSEs, which would seem to contradict their argument that GSEs like Fannie Mae and Freddie Mac cannot be liable under the FCA

CONCLUSION

For the reasons stated above, Foster respectfully requests that this Court enter and order:

1. Denying Defendants' Joint Motion to Dismiss.
2. Granting any other relief the Court deems necessary and just;

Alternatively, if the Court finds that Defendants have properly moved to dismiss, Foster respectfully requests an opportunity to amend his complaint.

Respectfully submitted,

_____
Eryk Folmer

Eryk Folmer
119 S. Emerson St., #241
Mt. Prospect, IL 60056
Telephone: (312) 854-7030
eryk@folmerlaw.com
ARDC No. 6299786